# Union Township *versus* Gibboney & Nelson.

1. One of several supervisors cannot bind a township for the performance of a contract, where the propriety of entering into the same is the subject of deliberation and the exercise of judgment. Where the business requires deliberation, consultation and judgment, all the members of a board should regularly convene, and no act should be done without the consent of a majority, or of both, if there are only two members.

2. One of several supervisors may bind the township in merely ministerial matters, such as the ordinary repair of the roads and keeping them in order, for the law contemplates that that should be done by the road tax, which the taxpayers may work out under the direction of the supervisor. But whether a debt should be contracted for the ordinary repair of roads and bridges is a matter for deliberation and judgment, and the township cannot be bound for borrowed money, save by the joint action of the supervisors; and even then their power to contract debts is very limited.

3. S. and Y., who were supervisors of a township, for their convenience agreed that they would each attend to the repairs of the roads at their respective ends of the township. S. gave orders to the laborers on the road on a storekeeper for goods to be charged to the township. In a suit thereon against the township, *Held*, that the orders were not binding on the township.

May 25th 1880. Before MERCUR, GORDON, TRUNKEY, STERRETT and GREEN, JJ. SHARSWOOD, C. J., and PAXSON, J., absent.

Error to the Court of Common Pleas of *Mifflin county*: Of May Term 1880, No. 6.

Assumpsit by Gibboney & Nelson against the township of Union, to recover the amount of certain orders for merchandise and other supplies, issued on the credit of the township by one of the supervisors thereof, to laborers employed by him to work on the roads of said township.

It appeared at the trial, before Bucher, P. J., that William F. Stroup and J. N. Yoder were supervisors of Union township for the years 1874 and 1875. For their convenience it was agreed between them that each one should take particular charge of the repair of the roads in the end of the township where they respectively resided. Stroup proceeded to repair the roads in his end, but there being no funds at hand from the receipt of road taxes, he arranged with the plaintiffs, who were storekeepers, to furnish materials and supplies to the men employed, upon orders issued by Stroup upon the credit of the township. The book account of the plaintiffs showed that lumber and other materials necessary for the repair of the roads to the amount of $36.76, were furnished, but payment of this account was not resisted. They also claimed that they accepted orders under the above-mentioned arrangement in favor of workmen employed in the repair of the roads, for provisions and other personal supplies, to the amount of $920, upon which $475.11 had been paid, leaving a balance due of

[Union Township *v.* Gibboney.]

$444.89. To recover this balance and the above sum of $36.76, with interest on both amounts, this suit was brought.

The plaintiffs offered in evidence the orders thus received, which were in form as follows:

"Belleville, June 12th 1874.

Gibboney & Nelson: Let Charles Bennett have goods to amount of two dollars, and charge to Union township.

$2. W. F. STROUP, Supt."

The defendant, inter alia, objected that one supervisor had no power to make such a contract. Objection overruled and evidence admitted.

The defendant, under objection and exception, gave evidence showing that the township auditors had a settlement with the supervisors, wherein the latter were allowed credit for the work done on the roads, covered by certain orders mentioned in the settlement, and that it was understood at the time of said settlement that there were outstanding orders which were not paid.

In the general charge, the court, inter alia, said:—

"The defendant insists that these orders are not binding upon the township for want of authority in the supervisors to draw them. For the present, we instruct you that these. orders are valid and binding upon the township, and you ought to find for the plaintiffs, unless indeed the defendant has shown that they have been paid. We permitted the defendant to give evidence that the township authorities had a settlement with the supervisors, and that they were allowed a credit for the work done on the roads covered by the orders in the settlement. It is also in proof that at the time this settlement was made, it was proven to the township auditors that there were outstanding orders unpaid. Now we instruct you that this settlement, which was made in the absence of the plaintiffs and without notice to them, cannot defeat a recovery."

Verdict for plaintiffs, and after judgment thereon, defendant took this writ and alleged that the court erred in admitting the orders in evidence and in the above portion of the charge.

*A. Reed* and *George W. & R. C. Elder*, for plaintiff in error.— The powers of a supervisor of township are limited. The manner in which the roads of his township are kept in repair, or the funds raised to do it, are all specifically provided for by law. There is no express power given to supervisors to borrow money, and we claim there is no implied power to do so. The agreement of Stroup, the supervisor, with defendants in error, that they should procure flour, and accept orders from the men who worked on the road, is borrowing money: Commonwealth ex rel. Middleton *v.* Commissioners of Allegheny, 1 Wright 241.

There is no such power lodged with supervisors of a township:

[Union Township *v.* Gibboney.]

City of Williamsport *v.* Commonwealth, 3 Norris 487. Road districts rank so low that they have no powers but what are expressly granted them, and such implied powers as are necessary to carry into effect their duties under their expressly granted powers : 1 Potter on Corp. 478. Even municipal authorities cannot be held except in the manner prescribed for doing municipal work : Addis *v.* City of Pittsburgh, 4 Norris 379. But whether supervisors can issue orders, bonds, borrow money or not, the doing of it is certainly a matter for deliberation, when the exercise of it is of such doubtful power, and therefore it cannot be done by one supervisor : Cooper and Grove *v.* Lampeter Township, 8 Watts 125. It would open the door to fraud to permit the supervisor to bind the township with orders such as were here given.

*D. W. Woods*, for defendants in error.—It was undoubtedly the duty of the supervisors to repair the roads and bridges in their districts, and to employ laborers to do the work when the taxpayers, on notice, neglected or refused to do it. When, therefore, they hired men for this purpose, they were clearly acting within the scope of their authority, and the township was bound to pay these men for this labor. This the township never did. Within the scope of their authority, the power of the supervisors to bind the township is clear : Cook & Wakely *v.* Deerfield Township, 14 P. F. Smith 445 ; Dauphin County *v.* Bridenhart, 4 Harris 458.

In all matters which the township is bound to perform, one supervisor may bind the township even where the other refuses his consent : Pottsville *v.* Norwegian Township, 2 Harris 543. One supervisor may bind the township by a merely ministerial act—such as the employment of hands and giving due bills for the amount of work done on the roads : Dull *v.* Ridgeway, 9 Barr 272 ; McNeal *v.* Allegheny Township, 1 Am. Law Reg. (O. S.) 124.

Where supervisors agree, as in this case, that each shall take charge of a certain portion of the township, the action of each within the limits assigned, is binding on the township : Commonwealth *v.* Supervisors of Colley Township, 5 Casey 121 ; Hopewell Township *v.* Putt, 2 W. N. C. 46.

Mr. Justice TRUNKEY delivered the opinion of the court, June 22d 1880.

Counties and townships are involuntary civil divisions of the state, incorporated by general laws, to aid in the administration of government. Their powers all relate to matters of state as distinguished from local concern, such as the administration of justice, and the establishment and repair of public highways. The statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all liabilities to which they are subject. Considered in respect to the limited number of their corporate

[Union Township *v.* Gibboney.]

powers, they rank low down in the scale or grade of corporate existence; and hence have been frequently termed *quasi* corporations. This designation distinguishes them from private corporations aggregate, and from municipal corporations proper, such as cities or towns acting under charters, or incorporating statutes, and which are invested with more powers, and endowed with more functions and a larger measure of corporate life: Dillon on Municipal Corporations, sect. 10 *a*.

It is a statutory duty of townships to open, construct and keep in repair all public roads within their limits, and they may make such contracts as shall be necessary and proper for the execution of that purpose. By the general statutes, supervisors are enjoined and required to open and constantly keep in repair all public highways, making sufficient causeways on marshy and swampy ground, and bridges over small creeks and rivulets, for which they may purchase, at the expense of the township, all necessary materials, and employ and direct a sufficient number of laborers. They may lay an assessment not exceeding one cent in the dollar on real and personal estate, which may be paid in work on the roads; and they have no power to issue a warrant for the collection of said tax until after they shall have given the taxpayers notice, and full opportunity to work out their respective taxes. Nor have they power to make a contract, the effect of which would be to deprive the taxpayers of that privilege. Power is given to lay an additional assessment for the purpose of paying any just debt due a former supervisor. Townships have no express authority to borrow money, and they have none, unless by necessary implication for carrying out the duties imposed upon them. They cannot give negotiable securities which would preclude defence on the merits against any holder.

One supervisor cannot bind the township for performance of a contract, the propriety of entering into which is the subject of deliberation and the exercise of judgment; but he may in matters purely ministerial. When the business requires deliberation, consultation and judgment, all should be convened, because the advice and opinions of all may be useful, and though they do not unite in opinion, a majority may act when there are more than two. Before constructing a new bridge, they must meet and act as a board, for this can only be done on deliberation and consultation, and with the assent of both, or a majority. But the ordinary repairs of roads and bridges, and opening roads authorized by the Court of Quarter Sessions, are classed with ministerial duties, and may be performed by one: Cooper *v.* Lampeter Township, 8 Watts 125. The court say: "It is conceded that one supervisor cannot levy a tax to pay the debts contracted and expenses incurred in the township. The consent of both is required, because it is a deliberative and not a ministerial duty. For the same reason such contracts

[Union Township *v.* Gibboney.]

cannot be made by less than a majority of the board, as this would enable the one to involve a township in expenses which would render a tax inevitable. They are not permitted to do indirectly what they cannot do directly. When damage is done to a road or bridge by a freshet or other accidental cause, or when it needs repair from the natural progress of decay, there can be no objection to the necessary expenditure being authorized by less than a majority. This is an absolute duty, which calls neither for deliberation nor consultation." The sound doctrine of that case has not been overruled by the later cases relied on by the plaintiffs below.

In Pottsville Borough *v.* Norwegian Township, 2 Harris 543, a bridge over a creek, the dividing line between the borough and township, had become ruinous and dangerous, and the borough, having requested the township to join in rebuilding, and the latter having neglected its duty, constructed a new bridge ; it was held, the actor could recover one-half the cost of such a bridge as was reasonably necessary ; but not half the cost of the one which was built if more expensive than was necessary having reference to the wealth of the township. There the necessity for a bridge had been settled, it was a legal duty of the borough and township to rebuild, and the law fixed the township for half the expense. It was held in Dull *v.* Ridgway Township, 9 Barr 272, that when a supervisor gives a due bill to a laborer which shows on its face it was for work done for a certain road, it is valid ; for that is in the line of his ministerial duty in employing laborers to open or repair a road. The laborer could recover for his work without the due bill, it adds not a title to his right ; and though prima facie entitling him to recover, it would not bar any meritorious defence. Opening a road in obedience to an order of the Quarter Sessions is a ministerial duty, for the supervisor cannot interpose his judgment to avoid it. Hence, it was ruled in Hopewell Township *v.* Putt, 2 W. N. C. 46, that where one supervisor awarded a contract for building a new road, a person who paid money on the contract, at the request of the supervisor, could recover the same from the township. Certainly, making the contract, though for work authoritatively commanded, went to the verge of the power of a single supervisor, if not beyond ; and one of the judges dissented.

Undoubtedly a county or township may be legally liable for a debt, without the active agency of the commissioners or supervisors. A county is liable for expenses of a jury in a capital case, and for the expenses of courts : Commissioners *v.* Hall, 7 Watts 290 ; McCalmont *v.* Allegheny County, 5 Casey 417. But these and like cases throw no light on the question whether one commissioner or one supervisor has power by contract to subject the county or township to liability for money or merchandise furnished to himself.

[Union Township v. Gibboney.]

The supervisors divided the township, each taking charge of the roads in his part. Their respective duties were repairing old roads and keeping them in order. The law contemplates that this should be done by the road tax, which the taxpayers may work out under the direction of the supervisors. If they refuse to work they must pay the tax in money, and it is the supervisors' duty to collect it and properly apply it for road purposes. Except when some extraordinary expenditure is required, it is not contemplated that debts shall be contracted to be paid by an additional assessment. Whether a debt should be contracted for the ordinary repairs of roads and bridges is a matter for deliberation and judgment, and the township cannot be bound for borrowed money save by the joint action of the supervisors; nor even then in all cases, for their power to contract debts is very limited. "Those who deal with such agents must take care to have the express consent of all to whom the law has intrusted the transaction of the public business. The inhabitants of the township whose interest must be protected, have a right to the counsel and judgment of all to whom such trusts are committed." Per ROGERS, J.

Stroup, as supervisor, employed laborers to repair the roads, and could have given them orders on the township treasury, or evidence of the amount of their work in the form of a due bill. Within such limit there is comparatively little room for abuse. He made a contract with the plaintiffs for credit to an indefinite amount, he to give his laborers orders on them, which they would accept and give goods therefor, on the credit of the township. These aggregate the sum of $952.50, and are in the following form: "Gibboney & Nelson: Let Charles Bennett have goods to amount of $2, and charge to Union township. W. F. STROUP, Supt." A more vicious method of contracting indebtedness against a township could scarcely be imagined, even if it were by the joint act of the supervisors. The parties to this transaction were honest, it is said, yet the supervisor who did the work and gave the orders, settled his accounts with the auditors and was allowed for the whole amount of labor done. The taxes nearly covered all the work which was done by both supervisors. The learned judge of the Common Pleas was entirely right in ruling "that this settlement, which was made in the absence of the plaintiffs and without notice to them, cannot defeat a recovery." It is illustrative of the wisdom of the law in withholding power from one supervisor to contract the debt. Stroup and the plaintiffs were honest, and the attempt is to hold the township liable for hundreds of dollars already paid to Stroup in his settlement. If this contract binds the township, what may be done by a dishonest officer? On its face it is a barter, wherein lurk temptations to excessive wages, excessive prices for goods, and favors of some sort between merchant and officer. Were the orders payable in money the danger to the

[Union Township *v.* Gibboney.]

interest of the township would be nearly as great. Such a contract as is set up here ought never to be made by supervisors; when it is the act of one only, for that reason the township is not bound; and, at present, it is unnecessary to say whether, if the act of both, it would be void on the ground of public policy.

We are of opinion it was error to admit the orders in evidence, and rule that they were binding upon the township.

That part of the plaintiffs' claim which is for materials furnished for repairs of the roads, at request of one of the supervisors, rests on a different footing, and no objection has been made to its recovery.

Judgment reversed, and a *venire facias de novo* awarded.