## COMMONWEALTH v. M. O. LOOMIS ET AL.

### ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 22, 1889—Decided October 7, 1889.
[To be reported.]

1. In erecting a county bridge, under the act of June 13, 1836, P. L. 560, it is the duty of the county commissioners to construct the approaches that are requisite to give to the traveling public access to it, such approaches being appliances necessary to the proper use and to be taken as parts of the bridge: Penn Tp. v. Perry Co., 78 Pa. 457.
2. But if the site for such bridge have been so selected that one of its termini does not connect with any public highway, the commissioners may not be compelled by mandamus to construct an approach to such terminus, until by appropriate proceedings a public highway has been laid out and opened thereto.
3. If the owner of land, lying between the end of the bridge and the nearest highway, have granted his consent to the construction of a connecting causeway over it, provided it be done in a particular manner, the court cannot by mandamus interfere with the discretion of the commissioners, and compel them to accept the conditional dedication and construct the approach under the conditions imposed.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 222 January Term 1889, Sup. Ct.; court below, No. 299 February Term 1887, C. P.

On January 13, 1887, there was filed a petition in the name of Mr. Lewis C. Cassidy, attorney general, averring that by due proceedings in the Court of Quarter Sessions of Bradford county, a bridge had been laid out over the Susquehanna river between the townships of Wyalusing and Terry, in said county, and the same had been duly entered of record as a county bridge; that Milton O. Loomis, George H. VanDyke and Levi W. Towner, the commissioners of said county, had procured estimates of the cost thereof, and had entered into contracts for the building of the masonry and superstructure, for sums aggregating $42,502; that said commissioners, alleging that

said bridge had been erected and completed under said contracts, petitioned the Court of Quarter Sessions of said county to appoint viewers to inspect the same; that viewers were duly appointed for that purpose, and upon their report the court by decree dated December 6, 1886, approved said bridge, which decree remained in full force; that the bridge so erected had not been completed and so erected and constructed as to be practicable, fit or safe for use by the public, in that said commissioners neither provided nor devised any way to get off said bridge at its eastern terminus, the bridge floor at said terminus being about twenty feet above the ground, and, were it not for · a temporary exit, erected by private citizens, but liable to be washed away or rendered unsafe by a small freshet, the bridge could not be used at all; that said commissioners still neglected and refused to complete said bridge and make the same fit and safe for travel; that said river, at the place where the public highway crossed it, a few rods north of the site of said bridge, was unsafe for fording, and the only means of crossing was by a ferry, which frequently was obstructed by ice, so that the public suffered great injury and inconvenience by the refusal of the commissioners to complete said bridge, and had no adequate, appropriate or specific remedy therefor;—praying for a mandamus requiring said commissioners to complete said bridge and so erect and construct the same as to be practicable, fit and safe for general travel. The same day, on application to MORROW, P. J., at chambers, an order was made by him awarding a writ of alternative mandamus upon this petition, which writ was thereupon issued and served upon said commissioners.

On February 17, 1887, the respondents filed their return to the writ, admitting the laying out and entering of said bridge as a county bridge; the entering into contracts for its construction, and the proceedings in the Court of Quarter Sessions in which it was inspected and approved; denying that said bridge had not been completed and was unfit or unsafe for public travel; averring that there was no public road or highway leading up to the eastern end of said bridge upon which an approach or embankment could be constructed, so as to provide a way of getting on and off said bridge in that manner, but that the land upon which it was sought to compel the construction of the approach was private property in the pos-

session of the owner, George H. Welles; for which reasons, averring their readiness to prove the same, the respondents submitted to the court whether they could be called on to answer further, and prayed to be dismissed, with costs.

To this answer the commonwealth, on April 12, 1887, demurred, specifying as causes of demurrer: 1. That the return was vague, indefinite and uncertain in its statements. 2. That it was evasive in not answering all the allegations of the petition. 3. That it was contradictory in first stating that the bridge had been completed, and then stating that there was no highway upon which an approach to it could be constructed.

On May 10, 1887, by leave of court, the commonwealth filed, nunc pro tunc as of April 12, 1887, a replication, joining issue on the matters alleged in the return, and further alleging, in answer thereto, that a public road had been laid out by the road commissioners of Wyalusing township on September 8, 1886, ending at high-water mark of said bridge, the right of way for which road had been granted, but it was not to be opened for use until the bridge should be completed as prayed in the relation filed in this case; that said high-water mark was at a point about 850 feet from the east abutment of the bridge in its present unfinished condition; that the land for this distance was low and often covered with water and was a part of the channel of the Susquehanna river, at least when so covered, and was owned by George H. Welles; that the two eastern spans of the bridge were placed upon this land with the assent of said owner, who was willing and consented to the building of one or more additional spans over said land in such manner as not to obstruct the natural flow of the water.

To this replication the respondents filed an answer or supplemental return, denying that the land mentioned in the replication was a part of the channel of the Susquehanna river, and denying that said Welles had given the right of way across said land or was willing that an approach to the bridge should be made thereon by an earth embankment.

On May 23, 1887, the commonwealth put on file a paper signed by G. H. Welles, agreeing to consider the land between the end of the road laid out by the road commissioners of Wyalusing township and the eastern abutment of the bridge, as a public highway, and consenting to the building thereon of one

or more spans in such manner as not to interfere with the natural flow of the water thereunder.

The case was then called for hearing, upon an oral application of the commonwealth's counsel for a peremptory mandamus, on the pleadings, and after argument the court, SITTSER, P. J., filed the following opinion:

On February 7, 1884, the petition of various citizens of Wyalusing township was presented to the Court of Quarter Sessions of Bradford county, setting forth that a bridge was needed across the Susquehanna river at Wyalusing, etc., whereupon viewers were appointed by the court. The viewers reported in favor of a bridge on May 5, 1884, and on September 1, 1884, the report of the viewers was approved by the grand jury and the court, and the bridge reported became a county bridge, and it became the duty of the county commissioners of Bradford county to erect and complete the same on the site indicated by the report of the viewers. The county commissioners proceeded to erect a bridge at that point, from bank to bank of the river, but at the eastern terminus they constructed no approach, so that it is impossible for those desiring to use it to get on or off at that end. On January 13, 1887, at the relation of the attorney general of the commonwealth, a writ of alternative mandamus was issued by the Court of Common Pleas of Bradford county to the county commissioners, directing them to complete the bridge or make known to the court why the same should not be done. To this the commissioners made answer and the application for a peremptory mandamus is to be disposed of on the petition and answer.

We are of opinion that the approaches are a necessary part of a bridge, and when a bridge is directed to be built by the county under proceedings of this character, we think the commissioners should not only build the piers and the superstructure but should also construct proper approaches, reasonably safe and convenient for public travel: Penn Tp. v. Perry Co., 78 Pa. 457. There is, however, no public highway connecting with the eastern terminus of the bridge. The viewers in selecting the most suitable place for the bridge, where it could be erected with the least expense, as permitted by § 37, act of June 13, 1836, P. L. 560, located the bridge at a point some

distance below where the road crosses the river. They had the power, under this section, to report whether any change in the bed of the road to be connected with the bridge was necessary, and if they had done so, the confirmation of their report would have laid out a road to the bridge according to the plot and survey returned by them. They failed to exercise this power, and left the eastern terminus unconnected with any highway. The land at the eastern terminus is private property. It belongs to Mr. G. H. Welles. The county commissioners have no power to appropriate it for public purposes. They cannot lay out a road to the bridge.

The bridge viewers not having acted upon this subject, the power to lay out a road to the bridge is now vested only in the road commissioners of Wyalusing township. They may lay out such a road, and the landowner can have his damages assessed in the regular way. The court has no power to lay .out the road, neither can the court authorize the county commissioners to do so. If the county commissioners should undertake to erect an approach to the eastern end of the bridge, they would be obliged to go upon the land of Mr. Welles, and would become trespassers. They cannot be compelled to build an approach ' until the ground has been furnished upon which to construct it.

The notice from Mr. Welles filed May 23, 1887, does not obviate this difficulty, as neither the court, nor Mr. Welles, nor both together, can lay out a road in Wyalusing township. It must be done by the road commissioners of the township. They alone can say where it shall begin and end, and they can also assess the damages. The consent of Mr. Welles to the building of an approach, would relieve the commissioners of the charge of being trespassers, but his consent is qualified. They may erect piers across his flats, but are not to interfere with the natural flow of the water. The commissioners may determine to construct the approach in some other way. We can, by mandamus, require them to build the approach, but cannot direct them how to build it. We can command a ministerial act to be done, but when the act requires deliberation, we leave the way of doing it to the parties whose duty it is to do it, and whose action we have commanded: Commonwealth v. Cochran, 5 Binn. 456.

Arguments.

When the county commissioners are required to build the approach, they must have the right to build it according to their own judgment. They must make it convenient and safe. The court will not become the architect, and the county will be held responsible if, through defective plans or construction, the approach fails to afford that reasonably convenient and safe access to the bridge which the law requires.

When a public road is laid out to the bridge, if the county commissioners should still refuse to construct an approach, the application for a mandamus can be renewed, but as the matter now stands the peremptory mandamus is refused.

The order refusing the mandamus having been entered, the commonwealth took this writ, specifying that the court erred:

1. In refusing the peremptory mandamus.
2. In not entering judgment on the demurrer for the relator.
3. In not entering judgment for the relator.

Mr. Rodney A. Mercur (with him Mr. William S. Kirkpatrick, Attorney General, and Mr. John F. Sanderson, Deputy Attorney General), for plaintiff in error:

1. The question in this case is, when shall the defendants be compelled by peremptory mandamus to construct an approach to the eastern end of this bridge? We contend one should be issued forthwith, while the court below holds that one should not at present be issued. The court below properly followed the ruling of this Court in Penn Tp. v. Perry Co., 78 Pa. 457, in holding it to be the duty of the commissioners to build the approaches. In several states, approaches and embankments, as a rule, have been held to be parts of the bridge: Watson v. Proprietors, 14 Me. 201; State v. Gorham, 37 Me. 451; Rush Co. v. R. etc. Road Co., 87 Ind. 504; Shelby Co. v. Duprez, 87 Ind. 509; Freeholders v. Strader, 3 Harr. (Del.) 108; Commonwealth v. Deerfield, 6 Allen 449. That mandamus is the proper remedy to compel their construction, can hardly be controverted: Myers v. Commonwealth, 110 Pa. 217.

2. The court refused the peremptory mandamus, because a public road had not been laid out connecting with the eastern terminus of the bridge. If by this the court meant the eastern terminus, as constructed by the respondents, there is no contro-

versy about the fact. But this eastern terminus is a temporary one only. A permenant approach must be built some day, which will necessarily make a new eastern terminus. At common law, a bridge was a common highway: Reg. v. Sainthill, 2 Ld. Raym. 1174; s. c. 3 Salk. 76. The same rule prevails in this country, and bridges are treated as portions of the highways which cross them: Rapho Tp. v. Moore, 68 Pa. 406; Penn Tp. v. Perry Co., 78 Pa. 457; Rigony v. Schuylkill Co., 103 Pa. 385; Washer v. Bullitt Co., 110 U. S. 558; Commonwealth v. Central Bridge, 12 Cush. 242; Chicago v. McGinn, 51 Ill. 266 (2 Am. Rep. 295); Union etc. R. Co. v. Commissioners, 4 Neb. 450; Shear. & Redf. on Neg., § 248. Why is it necessary that a public road be laid out over a portion of the bridge, and not the whole of it? None has been laid out over that portion already erected.

3. The commonwealth does not ask the court below, nor the county commissioners, nor G. H. Welles, nor all of them to-gether, to lay out a road, but contends that the road laid out by the commissioners of the township, from the main road to the high-water mark of the bridge, a point 850 feet from the east abut-ment as left by the county commissioners, is, strictly speaking, a road to the eastern terminus of the bridge when completed, as it must be eventually. There is no allegation but that the approach must be 850 feet long and terminate at this road. The consent of G. H. Welles furnishes the ground upon which the approach can be built. It is qualified, only for his own and his neighbors' protection. The relator does not ask the court to direct the respondents how to build the approach, but only to direct them to build it.

The relator alleges also, on information, that the township commissioners decline to follow the suggestion of the court below to lay out a road to the eastern abutment as left by the respon-dent, for they are advised this may make the township liable to complete the approach, but if no such liability will be thus cre-ated, they are willing to lay it out.

*Mr. I. McPherson* (with him *Mr. J. N. Califf* and *Mr. E. J. Angle*), for defendant in error:

1. If the merits of the case can now be passed on, we con-tend that the respondents performed their full duty. They

erected the bridge, and the court, upon the report of inspectors appointed under the act of March 18, 1864, P. L. 69, extended to Bradford county by act of February 27, 1865, P. L. 203, approved it by a decree which still stands unreversed. The case of Penn Tp. v. Perry Co., 78 Pa. 457, does not warrant the conclusion now sought to be drawn from it, that it was the duty of these respondents to construct the approach. That case arose under the special act of March 24, 1873, P. L. 369, and not under the act of June 13, 1836, P. L. 560, under which this bridge was built. Giving the word bridge its ordinary signification, as used in the act of 1836, it does not include the approaches: Webster Dict., word Bridge; Bouv. L. Dict., title Bridge. The act of April 15, 1869, P. L. 46, making special provision in certain cases for the construction of embankments leading to bridges, settles this question beyond controversy, as this act is in pari materia with the act of 1836, and must be considered in construing the act to which it is supplementary: Keeling's Road, 59 Pa. 358; Neeld's Road, 1 Pa. 353; Union Canal Co. v. O'Brien, 4 R. 358; Pittsburgh etc. Ry. Co.'s App., 1 Penny. 449. We know of no county wherein bridge approaches have been constructed by the county commissioners, except under the act of 1869, or under special acts such as that passed April 1, 1872, P. L. 683, relative to Allegheny county.

2. Even if it were respondents' duty to construct approaches to this bridge, we contend that the fact that there is no highway leading up to its eastern end upon which an approach could be constructed by them without becoming trespassers, is a sufficient reason for the non-performance of this duty. The road commissioners of Wyalusing township, under the provisions of the special act of April 13, 1843, P. L. 218, have the exclusive power to lay out and open such a road, and until they do so the respondents cannot be charged with neglect of duty. And the township, when such road is laid out, can also construct an approach, if the respondents are then in default, and charge the county with the cost. A mandamus will not lie to compel the performance of an unlawful act, and, to warrant the writ against a public officer, the relator must show a clear right: High on Extra. Rem., § 32 ; Commonwealth v. Pittsburgh, 34 Pa. 496 ; Easton v. Water Co., 97 Pa. 560.

The location of the site of a bridge rests with the board of viewers: Bedford Bridge, 72 Pa. 42. The viewers of this bridge, as their report clearly shows, located the terminus of the bridge at the river bank, and contemplated that a road should be laid out to it. There cannot be any such thing as a temporary terminus. The agreement of Welles does not remove the difficulty here. The township road is too far away to be reached by a mandamus.

OPINION, MR. JUSTICE GREEN:

It is unnecessary and scarcely possible to add anything to what has been so well said in the opinion of the learned court below refusing the writ of peremptory mandamus in this case. The bridge built by the commissioners is complete and has been approved by the bridge viewers. The approaches at the end have not been built, but the reason given for not building them, in the return of the commissioners, seems to be quite sufficient. There is no road opened at the eastern end with which to connect, or upon which to erect proper approaches. The commissioners have no power to build such a road, nor has the court the right to order it opened except in proper proceedings, which have never been commenced.

The obligation of the county to build proper approaches, is clearly established in the case of Penn Tp. v. Perry Co., 78 Pa. 457, but neither that nor any other case decides that the county must also open and construct roads over adjacent private property with which to connect the approaches. It would be a highly strained construction of the duty to build approaches, to extend it to the laying out, opening and construction of public roads. It is enough to say that the law does not clothe county commissioners with such power. A stretch of eight hundred and fifty feet over the private property of a citizen, cannot be regarded in any point of view as a mere approach to a bridge. When it is to be used as a means of public passage, it must be appropriated to that end as a road or highway; and when this has been done in a lawful manner, there will be no difficulty in securing the construction of proper approaches by proceedings against the county commissioners, if they shall fail to voluntarily perform their duty in that respect.

Decree affirmed.