# Williamsport, Appellant, *v.* Lycoming County.

*Bridges—County bridges—Cities—Duty to repair—Toll bridges.*

Where the duty of maintaining highways is imposed on cities, town-
ships and boroughs, and the duty of maintaining bridges is imposed on
the county, the question as to what constitutes an approach to the bridge,
in other words, where the duty of the county begins and the duty of the
city, borough or township ends, must generally depend for its determi-
nation upon the facts of the particular case, and not upon any arbitrary
rule relative to the distance from the bridge structure.

A company was incorporated under the act of 1874 for the purpose
of constructing and maintaining a toll bridge over the west branch of
the Susquehanna river from the foot of Maynard street in the city of
Williamsport to a point opposite in Armstrong Township; the foot of
Maynard street was 1,985 feet distant from the river, and in the follow-
ing year the company acquired title to a strip of land sixty feet wide
extending from that point to the river; in the meantime it constructed

a bridge over the river, a bridge over a log basin which lay between the river and the foot of Maynard street, and an artificial roadway about 700 feet long extending from the river bridge to the basin bridge of an average width of thirty feet, and varying in height from three to fifteen feet above the natural level of the land; for twenty-five years this roadway was kept open continuously for public travel, and was used as a public highway by all persons who desired to cross the bridge, as well as by those who desired access to the river and the fields lying on either side of the roadway; in 1891 the county acquired the bridge in proceedings under the act of 1876.   *Held,* in a case stated between the city and the county to determine whether the former or the latter 'was liable for an accident to a pedestrian, that, assuming that the duty of repairing county bridges and their approaches devolved upon the county, it did not extend to the whole of the highway connecting the two bridges, and that it was incumbent on the plaintiff to show that the place of the accident was within the limits of the approach necessary to make the bridge accessible physically from that highway.

Distinction between an approach to a bridge and a way provided for reaching the bridge from another highway considered.

Under the Act March 30, 1859, P. L. 309, extended to the county of Lycoming by the Act of March 12, 1860, P. L. 144, the city of Williamsport was bound to keep in repair a county bridge located within its limits, and this was the case, although Williamsport was not a city when the act of March 12, 1860, was passed.

In Pennsylvania there is no common-law duty of counties to repair highways, or bridges or sidewalks and highways; such duty, and consequent liability for negligence in the care thereof, must be imposed by statute, or be held not to exist.

Prior to the Acts of March 30, 1905, P. L. 75, 81, the duty of the city of Williamsport to repair county bridges situated within the municipal limits, applied not only to bridges built at the expense of the county, but also to toll bridges which had been freed from tolls, and acquired by the county in proceedings instituted under the Act of May 8, 1876, P. L. 131.

*Case stated—Facts set forth—Material facts—Practice, C. P.*

It is essential to a case stated that all the material facts be agreed upon, so that the court may have nothing to do but to pronounce the law arising out of them.   As in a special verdict, the facts must be distinctly and expressly agreed upon and set forth as admitted, and not left to be inferred from mere evidence; whatever is not so set forth will be taken not to exist.

Argued March 6, 1907.   Appeal, No. 19, March T., 1906, by plaintiff, from judgment of C. P. Lycoming Co., March T., 1905, No. 107, for defendant on case stated in suit of City of

Williamsport v. Lycoming County.    Before RICE, P. J.,
PORTER, HENDERSON, MORRISON, HEAD and BEAVER, JJ.
Affirmed.

Case stated to determine the liability for a payment of $250
made by the plaintiff to Charles M. Shooter as compensation
for personal injuries sustained by him as the result of a de-
fective condition of a highway within the municipal limits of
the city of Williamsport.    Before HART, P. J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was in entering judgment for defendant.

*W. D. Crocker* and *F. P. Cummings*, city solicitor, for appel-
lant, cited : Howe v. Crawford County, 47 Pa. 361 ; Humphreys
v. Armstrong County, 56 Pa. 204 ; Penn Twp. v. Perry County,
78 Pa. 457 ; Westfield Borough v. Tioga County, 150 Pa. 152 ;
Francis v. Franklin Twp., 179 Pa. 195 ; Erie County v. Com.,
127 Pa. 197 ; Shadler v. Blair County, 136 Pa. 488 ; Whit-
mire v. Muncy Creek Twp., 17 Pa. Superior Ct. 399. .

*J. F. Strieby*, for appellee.

OPINION BY RICE, P. J., October 7, 1907 :

The Maynard Street Bridge Company was incorporated in
July, 1875, under the provisions of the general corporation act
of 1874, for the purpose of constructing and maintaining a toll-
bridge over the West Branch of the Susquehanna river " from
the foot of Maynard street " (in the city of Williamsport) " to
a point opposite in Armstrong township."

At the date of the company's charter, the foot of Maynard
street was at Filbert or First street—1,985 feet distant from
the river—and in August of the following year the bridge com-
pany obtained a conveyance of a strip of land sixty feet wide
extending from this point in Filbert street to the river.    It is
set forth in the case stated that this was conveyed to the com-
pany as an approach to the bridge from the highway on the
north, and the deed contains this pertinent recital : " The same
covering and being the way, approach and street from the line
of Filbert street by an extension of Maynard street to the south
line of the north abutment of the bridge aforesaid."

In the meantime the company constructed: (a) a bridge across the river; (b) a bridge across a log basin which lay between the river and the foot of Maynard street; (c) an artificial roadway extending from the river bridge to the basin bridge of an average width of thirty feet, and varying in height from three to fifteen feet above the natural level of the land. Upon the completion of these structures and this roadway in the spring of 1876, the bridge was opened to the public as a toll-bridge. Since that time, it is admitted, the strip of land above described leading from Filbert or First street to the bridge has been kept open continuously for public travel, and has been used as a public highway by all persons who desired to cross the bridge as well as by those who desired access to the river at or near the northern terminus of the bridge, and by such other persons as might have occasion to visit and use the fields lying on either side of the strip of land. But it seems from the admissions of the case stated that it never was formally accepted or adopted as a city street by the corporate authorities.

In 1891, residents and taxpayers of the county instituted and carried to successful termination, proceedings under the Act of May 8, 1876, P. L. 131, to have the bridge taken as a county bridge. It was described in the petition as being erected " across the West Branch of the Susquehanna River at and opposite to the foot of a public highway in the city of Williamsport, known as Maynard street; the said river crossing the said highway and the public road leading to said bridge at its southerly end in Armstrong township." Damages in the sum of $41,522 " by reason of the taking of the same, including the value of the bridge, franchises and toll houses," were awarded to the bridge company, and paid by the county, and since the termination of these proceedings in December, 1891, it is admitted, the county kept both the basin bridge and the river bridge in repair, and restored both bridges after the flood of May 20, 1894, which practically destroyed them. It is also admitted that since that flood, which injured the embankment between the two bridges, the county commissioners have several times repaired the roadway, the slopes leading therefrom to the north end of the river bridge and to the south end of the basin bridge, and also a plank walk for pedestrians which was laid

on the west side of the roadway before the condemnation proceedings.

In December, 1901, one Charles M. Shooter was injured by a fall occasioned by the defective condition of the sidewalk at a point described in the case stated as being "upon the slope leading to the north end of the river bridge, and within one hundred feet of the wing walls." He brought separate suits against the county of Lycoming and the city of Williamsport, which were compromised by payment to him by the city of a certain sum, under an agreement between the city and the county which stipulated for the present suit and case stated. The controlling question for decision is, whether the county was charged with the duty to maintain and keep in repair the highway between the two bridges, and particularly the slope to the north end of the river bridge at the place where the accident occurred; for without the duty of repair no liability rests on the county: Elliott on Roads and Streets, sec. 53; Rapho v. Moore, 68 Pa. 404. The learned judge below held in a well-considered opinion that the county was not liable and in that conclusion we concur.

Inasmuch as the approaches necessary to make a bridge accessible are generally held in Pennsylvania to be included within the meaning of the term, it follows that the duty to repair such approaches is upon the county, if under the statute it is the duty of the county to repair the bridge: Francis v. Franklin Township, 179 Pa. 195; Penn Township v. Perry County, 78 Pa. 457; Westfield Borough v. Tioga County, 150 Pa. 152. Where the duty of maintaining highways is imposed on cities, townships and boroughs, and the duty of maintaining bridges is imposed on the county, the question as to what constitutes an approach to the bridge, in other words, where the duty of the county begins and the duty of the city, borough or township ends, must generally depend for its determination upon the facts of the particular case, and not upon any arbitrary rule relative to the distance from the bridge structure. There is an obvious distinction between the way, concededly a highway, leading from Filbert street to the bridge in question and the approach necessary to convenient access from that highway to the bridge proper. A similar distinction between an approach to a bridge and a way leading to a bridge was recognized in Commonwealth v. Loomis, 128 Pa. 174, where Justice

GREEN said : " The obligation of the county to build proper approaches is clearly established in the case of Penn Twp. v. Perry County, 78 Pa. 457, but neither that nor any other case decides that the county must also open and construct roads over adjacent private property with which to connect the approaches. It would be a highly strained construction of the duty to build approaches to extend it to laying out, opening and construction of public roads. It is enough to say that the law does not clothe county commissioners with such power. A stretch of 850 feet over the private property of a citizen cannot be regarded in any point of view as a mere approach to a bridge. When it is to be used as a means of public passage, it must be appropriated to that end as a road or highway ; and when this has been done in a lawful manner there will be no difficulty in securing the construction of proper approaches by proceedings against the county commissioners, if they shall fail to voluntarily perform their duty in that respect." So here, assuming that the duty to repair the bridge at the time the cause of action accrued was on the county, it was not sufficient for the plaintiff to show that the place of accident was within the highway leading from Filbert street to the northern end of the bridge superstructure. It was incumbent on the plaintiff to show further that it was within the limits of the approach necessary to make the bridge accessible physically from that highway. The case stated contains no distinct admission that it was upon the approach to the bridge, but we are asked to infer that it was so from the admitted facts that it was " upon the slope leading to the north end of the river bridge and within 100 feet of the wing walls of the river bridge." We do not say that the approach to a bridge is confined to that part of the embankment which is within the wing walls, but neither is it clearly apparent as matter of law that the slope here referred to was necessarily a part of the approach to the bridge. In many cases the determination of the question of how much of the embankment constitutes the approach, so as to be a part of the bridge, is for the jury : 5 Cyclopedia of Law and Procedure, 1053. It is essential to a case stated that all the material facts be agreed upon, so that the court may have nothing to do but to pronounce the law arising out of them. As in a special verdict, the facts must be distinctly and

expressly agreed upon and set forth as admitted, and not left
to be inferred from mere evidence ; whatever is not so set forth
will be taken not to exist.   But we deem it advisable not to
put our decision upon the indefiniteness of the case stated
upon this particular question of fact, but to consider the
broader question whether the duty of repairing the. bridge
devolved upon the county.

In Commonwealth v. Commissioners of Monroe County, 2 W.
& S. 495 (1841), it was declared upon review and considera-
tion of our legislation from the year 1700 to the year 1836, that
" when a county bridge has been once legally built, such ordi-
nary repairs as are necessary to preserve it fit for use, are to be
made by the, supervisors of the townships, as in the case of
roads."   Of course the court was not speaking of bridges over
streams on the line of adjoining counties.   There is a dictum
in Howe v. Crawford County, 47 Pa. 361, decided in 1864, to
the effect that the duty to keep in repair a county bridge es-
tablished by judicial proceedings prior to the act of 1836 de-
volved upon the county ; but in Erie County v. Commonwealth,
127 Pa. 197, this was declared to in conflict with Commonwealth
v. Monroe, and was expressly disapproved, and the general
rule, as declared in that case, was reaffirmed as to counties ex-
cepted from the operation of the Act of April 13, 1843, P. L.
221.   This general rule is not affirmatively expressed in so
many words in the act of 1836, but as the bridge when com-
pleted becomes part of the highway, the duty of repair must
necessarily devolve upon the township or other municipal divi-
sion of the state on which rests the duty of repairing the high-
way of which it forms a part, if no statute, either expressly or
by clear implication, imposes the duty upon the county.   This
we understand to be the doctrine of Commonwealth v. Monroe
County and Erie County v. Commonwealth.   Shortly after the
former case was decided, and, it may be surmised, because of
what was said in that case as to the duty of repair, the act of
1843 was passed.   This act made it the duty of the county com-
missioners, except in Washington and some other counties, to
repair " all bridges erected by the county," and to pay the expenses
of such repairs out of the county treasury in the usual manner.
The bridge in question was not originally " erected " by the
county.   But as the act of 1876, relative to the acquisition of

such bridges and the abolition of tolls thereon, provides that upon approval of the report of viewers the damages shall be payable out of the county treasury, and "the said bridge . . . . shall be taken possession of by the county commissioners, and shall thenceforth be declared a county bridge," we entertain no doubt that it was the intention of the legislature that the statute governing the repair of county bridges in the county wherein the bridge is situated should apply to a bridge so taken and converted from a toll bridge to a free county bridge. As to the bridge in question this would be the act of 1843, unless that act has been modified or repealed as to Lycoming county. By the second section of the Act of April 26, 1850, P. L. 615, 616, the provisions of the act of 1843 were extended to the county of Washington, which, as has been stated, was originally excepted out of the latter act. By the Act of March 30, 1859, P. L. 309, entitled, "An act relating to roads and bridges in Washington county," which was extended to the county of Lycoming by the Act of March 12, 1860, P. L. 144, it was provided in the sixth section, "that it shall be the duty of the supervisors of the several townships, and the street commissioner, or other person having charge of the highways in incorporated boroughs, to keep in repair all bridges built, or that may hereafter be built, by the county commissioners, at the charge of the county, and they shall be subject to the like penalties for neglect as they are now liable to in the case of roads and bridges built at the expense of the township or borough." The succeeding section prescribes the contingencies in which it shall be the duty of the county to repair or rebuild, and it is declared in the last section, "that all acts inconsistent with the foregoing are hereby repealed, so far as they relate to the county of Washington." The sixth section came before this court for construction in Whitmire v. Muncy Creek Township, 17 Pa. Superior Ct. 399, and later before the Supreme Court in Smith v. Muncy Creek Township, 206 Pa. 7. It was held in both cases that the township's supervisors were not agents of the county commissioners in making repairs to a county bridge, and that the duty of inspecting and repairing was primarily on the township within which the bridge was located. These decisions are not questioned, but it is contended that the county of Lycoming is relieved only from the duty of repairing county

bridges in townships and boroughs, but not in cities. If there had been a city or cities in the county of Washington at the time the local law of 1859 was enacted, or in the county of Lycoming when it was extended to that county, there would be plausibility in this construction of the act, but even in the supposed case it is not clear that the act would not apply to the whole of a county bridge, one end of which was in a city and the other end in a township or borough. In the case of Pottsville Borough v. Norwegian Township, 14 Pa. 543, an action was brought by the borough to recover from the township one-half the cost of a bridge built upon a public highway over a creek which was the boundary between the two. The defense was urged and sustained in the court below that no valid contract was shown which would bind the township; but the judgment was reversed, the court saying, "it is the law which throws the burden on the township of Norwegian, and not the contract of the supervisors, and it must redeem the legal obligation." The relevancy of this decision in the construction of the act of 1859, consists in this, that the 34th section of the act of 1836, which speaks only of bridges over streams on the boundary or on the division line of townships, and provides that such bridges "shall be built and maintained at the joint and equal expense of the said townships," was held. to apply to a bridge over a stream on the division line of a township and a borough. Other illustrative cases in which, in order to carry out the obvious intention of the legislature, certain road and bridge laws have been held to apply in boroughs, although townships only are mentioned, are, Road in Milton, 40 Pa. 300, and Westfield Boro. v. Tioga County, 150 Pa. 152.

But whatever be the significance that the omission to mention cities in the act of 1859 would have in the supposed case, it can have none in the determination of the question before us, in view of the fact that there was no city in either county at the time the act was passed or extended. This being remembered, it is plain that the primary object of the law was not to regulate the affairs of boroughs and townships as distinguished from cities, but to reinstate in the particular county the law as to the repair of county bridges as it existed prior to the act of 1843. The purpose of the legislature being

to relieve the county from the duty of repair imposed by the act of 1843, and to subject it to that duty only in certain contingences mentioned in the next section, it was very natural that the legislature should express in words what would have been implied in law upon the abrogation of the act of 1843, namely, that the primary duty of repair devolved upon the boroughs and townships. The act relates to county bridges in general, not merely to county bridges located in particular subdivisions of the county. At the time of its enactment it applied to every part of the county, and completely supplanted the act of 1843. There is no stable ground upon which to base a conclusion that a subsequent conversion of part of the territory of the county into a city would revive the act of 1843 as to the portion of a county bridge which might happen to be in that territory, and leave the portion of the same bridge that might happen to be in a township or borough under the act of 1859, or would revive the act of 1843 as to the whole bridge and its approaches, and devolve the duty of repair upon the county. And if, as to that portion of the county, the act of 1843 was not revived when Williamsport became a city, neither was it revived when the bridge in question became a county bridge. Apart from the act of 1843, we know of no statute in force when this accident occurred which can be claimed to have the effect of imposing the duty of repairing the highway between the river bridge and the basin bridge upon the county of Lycoming. The fact that it made repairs created no obligation to continue to make them as occasion might arise : Francis v. Franklin Township, 179 Pa. 195. Nor in Pennsylvania is there any common-law duty of counties to repair highways, or bridges or sidewalks in highways ; such duty, and consequent liability for negligence in the care thereof, must be imposed by statute, or be held not to exist. This general proposition is fully sustained, we think, by the opinion of Mr. Justice POTTER in the recent case of Bucher v. Northumberland County, 209 Pa. 618. It is applicable to the facts of the present case, and is a conclusive bar to recovery from the county for an accident which occurred prior to the Acts of March 30, 1905, P. L. 75, 81.

Judgment affirmed.